UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CADDO SYSTEMS, INC. and 511 TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SIEMENS AKTIENGESELLSCHAFT (AG) and SIEMENS INDUSTRY, INC., <br><br> Defendants. | No. 20 C 05927 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Caddo Systems, Inc. and 511 Technologies, Inc. (collectively, "Caddo") filed patent infringement claims against Siemens Aktiengesellschaft (AG) and Siemens Industry, Inc. ("SII"). Siemens AG moved to dismiss the complaint for lack of personal jurisdiction.[1] Caddo opposed and moved for leave to conduct expedited jurisdictional discovery in lieu of dismissal. For the reasons set forth below, Siemens AG's motion to dismiss is granted and Caddo's motion for jurisdictional discovery is denied.

**Background**

Caddo's complaint alleges infringement of six patents: U.S. Patent Numbers 7,191,411, 7,216,301, 7,640,517, 7,725,836, 8,352,880, and 10,037,127 (collectively, the "Asserted Patents"). The Asserted Patents are alternatively titled "Active Path

---

[1] SII separately moved for summary judgment on the claims against it, which the Court granted. *Caddo Sys., Inc. v. Siemens Aktiengesellschaft (AG)*, 2022 WL 444134 (N.D. Ill. Feb. 11, 2022).

1

Menu Navigation System" or "Active Path Navigation System." The patents generally claim methods for displaying graphical user menus, displaying items in a given menu level, and enabling selection thereof via an invention Caddo refers to as an "active path." Caddo alleges that Siemens AG's website practices the patented methods by displaying a hierarchical menu system when users navigate to different sections of the site. It does not identify any other Siemens AG products among its Accused Instrumentalities. *See* R. 70.

Siemens AG is a foreign corporation based in Germany and organized under German law. Its principal places of business are in Munich and Berlin. R 76-1 ¶ 3. Siemens AG does not have any offices in the United States—it previously subleased office space in Houston, Texas for Lisa Davis, a member of its Managing Board with responsibility for the Siemens energy business. Between July 2014 and February 2021, Siemens AG was registered as a foreign entity doing business in the state of Texas. R. 76-1 ¶ 10 n.3. Davis left the company in February 2020, at which time Siemens AG closed its Houston office. Siemens AG contributed to a pension fund for Ms. Davis through January 2021. R. 85-1 ¶¶ 11-13.

Caddo identified three individuals on LinkedIn it alleges are presently employed by Siemens AG in the United States. R. 82-1 Exs. 22-24. At least two of those employees appear to work for subsidiaries of Siemens AG, while the precise employer of the third is unclear. According to declarations submitted by Siemens AG's in-house counsel Paul Salazar, the company has not employed anyone in the United

States since February 2020, when Ms. Davis left her board position. R. 76-1 ¶ 12; R. 85-1 ¶ 21.

Siemens AG holds thousands of U.S. patents. R. 82-1 Exs. 10-13. Caddo also cited evidence that Siemens AG has entered into purchase contracts and license agreements with at least one U.S.-based software vendor, Progress Software Corporation ("PSC"). The software products Siemens AG purchased allegedly encompass the .NET user interface components of the Accused Instrumentalities, including the Siemens AG website. R. 97, at 2-3.

Siemens AG's website was developed in and is managed from locations outside the United States (it is hosted in Ireland). R. 85-1 ¶¶ 25-26. When a user accesses the website, at least for the first time, the user is prompted to review and agree to a Cookies Notice, a Privacy Notice, and certain Terms of Use. Acceptance of at least the cookies policy is mandatory in order to use the website, and such use functionally constitutes acceptance of the Terms of Use. The Privacy Notice informs users of certain rights they have against Siemens AG, including the right to obtain information regarding how their personal data is processed and the right to correct inaccurate personal data. U.S. residents who access the website also have the right to annually request a list of any personal data Siemens AG has disclosed to third parties for direct marketing purposes in the previous year. R. 82-1 Exs. 3-7. The Privacy Notice is required, to at least some extent, by the European Union's General Data Protection Regulation ("GDPR") and is included on other international versions of the Siemens AG website. R. 85, at 5; R. 85-2 Ex. 6.

3

Siemens AG also enters into data protection agreements with its U.S. subsidiaries and affiliates, which number in the dozens. These agreements entitle users and customers in the U.S. to certain rights against Siemens AG regarding protection of their personal data. R. 82-1 Ex. 5. Siemens AG claims that these agreements are not directed toward the U.S., citing to a section that references the GDPR and restricts its geographical scope to "companies located in the European Union Area." R. 85, at 5-6.

Caddo claims that Siemens AG's website facilitates contacts with customers in the U.S., including specifically in Illinois, in several ways. First, Caddo says the website enables product sales with customers in the U.S. For example, Caddo alleges that users can navigate the Siemens AG website to product listings for Siemens AG's "Desigo System,"[2] including "valves and actuators," "automation control," and "room thermostats," and make purchases. The website also allows users to select "USA" as a country of interest and create login profiles. R. 82-1 Exs. 19-24. Caddo further alleges that Siemens AG's website directs new and existing customers to "RUGGEDCOM" sales representatives located in Illinois. R. 82-1 ¶ 24.

Next, Caddo claims Siemens AG uses its website to recruit potential employees in the U.S. Specifically, Caddo cites to 39 job listings in Chicago, IL accessible through Siemens AG's website. R. 82-1 Ex. 25. Customers in the U.S. can also subscribe to

---

[2] Desigo CC is a building management software program and is one of the Accused Instrumentalities. It is discussed in more detail in the Court's summary judgment opinion. *See Caddo Sys.*, 2022 WL 444134.

4

newsletters and printed publications by providing their contact information through the website. R. 82-1 Ex. 26. Finally, customers can obtain product support, download software and firmware updates, and obtain other product documentation through the Siemens AG website. R. 82-1 Ex. 27.

Caddo also cites to Siemens AG's 2020 Annual Report as evidence of U.S.-focused activities. According to Caddo, the Report shows that Siemens AG attributes billions of dollars in revenues to sales in the United States and engages in "the same" research and development activities as its U.S. subsidiaries. R. 82-1 Ex. 8.

Siemens AG disputes several of these points at least in part. According to Salazar, Siemens AG itself does not sell or market any products in the U.S.—rather, its U.S.-based subsidiaries do so. It notes that several of the websites cited by Caddo with various product listings are identified as belonging to its subsidiary, Siemens Switzerland Ltd. Furthermore, RUGGEDCOM is a trademark of Siemens Canada Ltd., which manufactures and sells those products. 85-1 ¶ 8; 85-2 Ex. 4. Siemens AG does not control the day-to-day operations of these subsidiaries. R. 85-1 ¶¶ 5, 7. Siemens AG responds that the Annual Report defines "Siemens" to includes both Siemens AG and its subsidiaries. R. 85-1 ¶ 3. To what extent the revenue of Siemens AG's subsidiaries flows to Siemens AG itself is not immediately clear from the record.

As to the job listings, Siemens AG notes they are populated by its subsidiaries, and that none of Caddo's cited listings are solicited by Siemens AG itself. R. 85, at 2-3. Siemens AG also notes that the cited newsletter page is a landing page that allows users to select online newsletters from more than 100 countries. R. 85-1 ¶ 29.

5

**Legal Standard**

"[P]ersonal jurisdictional issues in patent infringement cases are reviewed under Federal Circuit law, not regional circuit law." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009).³ When a court decides a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff must make a "prima facie case for personal jurisdiction." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012); *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). "In ruling on a Rule 12(b)(2) motion, courts are not limited to consideration of facts alleged in the complaint, but may also consider affidavits and other written materials in the absence of an evidentiary hearing." *Indag GmbH & Co. v. IMA S.P.A.*, 150 F. Supp. 3d 946, 956 (N.D. Ill. 2015) (citing *Autogenomics*, 566 F.3d at 1017). Courts must construe the pleadings and affidavits in the light most favorable to the plaintiff. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008).

**Analysis**

Siemens AG denies that it is subject to personal jurisdiction on Caddo's infringement claims anywhere in the United States. "Analysis of personal jurisdiction in federal court begins with Rule 4 of the Federal Rules of Civil Procedure."

---

³ Because the Federal Circuit and Seventh Circuit are largely in harmony on personal jurisdiction issues, Seventh Circuit cases remain strongly persuasive. *See Chamberlain Grp., Inc. v. Techtronic Indus. Co., Ltd.*, 2017 WL 3394741, at *3 (N.D. Ill. Aug. 8, 2017).

6

*Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009). Rule 4(k)(1)(A) states that service of process establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Under this analysis, the federal court "analyz[es] the long-arm statute and governing principles of the forum state." *Touchcom*, 574 F.3d at 1410. Alternatively, Rule 4(k)(2) "allow[s] a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes*, 563 F.3d at 1293-94. Because the Illinois long-arm statute "permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment," this Court's due process inquiry is nearly the same under either rule. *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015) (citing 735 ILCS 5/2-209(c)). The only difference is the relevant forum—the due process analysis under Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Synthes*, 563 F.3d at 1295.

In determining whether the exercise of personal jurisdiction comports with due process, the "constitutional touchstone" is "whether the defendant purposefully established 'minimum contacts'" in the relevant forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[I]t is essential in each case that there be some act by which the

7

defendant purposefully avails itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Contacts with the forum that are 'random,' 'fortuitous,' or 'attenuated,' or that result from the 'unilateral activity of another party or third person' are not sufficient to establish personal jurisdiction." *Touchcom*, 574 F.3d at 1412 (quoting *Burger King*, 471 U.S. at 475).

Caddo argues that the Court should evaluate Siemens AG's motion under 4(k)(2). The first prong of this rule, that the plaintiff's claim arises under federal law, is clearly met. *See* R. 41 ¶ 1. The second prong is satisfied if the defendant is not subject to personal jurisdiction in any state's courts of general jurisdiction. This requirement poses practical difficulties for both sides—it "either places a burden on the plaintiff of proving a negative many times over, *viz.,* that defendant is *not* subject to jurisdiction in any of the fifty states, or requires that the defendant concede its potential amenability to suit in federal court (by denying its amenability to suit in any state court) or submit[ ] to jurisdiction in a particular state, an uninviting choice." *Touchcom*, 574 F.3d at 1413. Citing Rule 4(k)(2)'s purpose of closing the loophole by which defendants could escape jurisdiction in federal court despite having minimum contacts with the United States, the Federal Circuit adopted an approach from the Seventh Circuit that permits a court to use Rule 4(k)(2) if the defendant contends that it cannot be sued in the forum state and refuses to identify any other state where suit is possible. *Id.* at 1415 (citing *ISI Int'l Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001).

Siemens AG clearly disputes personal jurisdiction in Illinois, and it has offered no alternative state where it would be amenable to suit. Accordingly, this prong is satisfied, and the Court may consider Siemens AG's aggregate contacts with the United States as a whole under Rule 4(k)(2).

The remaining prong asks whether the exercise of jurisdiction comports with due process. Caddo claims Siemens AG has sufficient contacts with the United States to establish general jurisdiction, or failing that, specific jurisdiction.

I. <u>General Jurisdiction</u>

"A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the [forum] are so 'continuous and systematic' as to render them essentially at home in the forum . . . ." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). This constitutional requirement is "considerably more stringent" than what is necessary to show specific jurisdiction. *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012); *see also Avocent*, 552 F.3d at 1330. "The Supreme Court has identified two 'paradigm all-purpose forums for general jurisdiction' for a corporation: the state of the corporation's principal place of business or the state of its incorporation." *Indag*, 150 F. Supp. 3d at 958. Outside these "easy cases," general jurisdiction has been found only on "exceptional facts." *See Daimler AG v. Bauman*, 571 U.S. 117, 129 & n.8 (2014).

In its various submissions, Caddo identifies several "continuous and systematic contacts" it claims Siemens AG has with the United States as a whole:

9

- Entering into cookies, privacy, and terms of use contracts with U.S.-based users of Siemens AG's website;
- entering into data protection agreements with its U.S. subsidiaries and California citizens;
- attributing revenue to sales in the U.S.;
- applying for and holding U.S. patents;
- business registration and sublease of office space in Texas;
- employing and contributing to the pension fund of a Houston-based Managing Board member;
- self-identification of certain U.S. residents as Siemens AG employees;
- posting open job listings in Chicago; and
- research and development activities in the United States.

R. 97, at 4 & n.3.

Several of these contacts can be disregarded or discounted. Ms. Davis, the board member, left Siemens AG before this suit was filed, and Siemens AG closed its Texas office at the same time (though its business registration continued for a short time post-filing). The allegations of U.S. employees and job postings are also not supported by the evidence. Siemens AG reviewed its corporate directory and organizational chart and did not identify any of the identified individuals as Siemens AG employees, and none of the job postings are from Siemens AG itself.

Siemens AG's holding of U.S. patents also carries little weight in this jurisdictional analysis. Caddo cites to two cases from this district that relied at least in part on patent ownership to confer jurisdiction. *See SRAM Corp. v. Sunrace Roots Enter. Co.*, 390 F. Supp. 2d 781, 787 (N.D. Ill. 2005); *Viskase Companies, Inc. v. World PAC Int'l AG*, 710 F. Supp. 2d 754, 760 (N.D. Ill. 2010). But both of those decisions concerned *specific* jurisdiction, and the patents at issue in the core dispute were held

by the defendants. Patent ownership may subject a defendant to specific jurisdiction in certain cases, but that does not mean general jurisdiction is appropriate on the same basis. *See Goodyear*, 564 U.S. at 927 ("[T]ies serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.").

Furthermore, to the extent any of these contacts are carried out in the U.S. by Siemens AG's subsidiaries (for example, product sales or research and development activities), they cannot simply be imputed to Siemens AG. The Supreme Court in *Daimler* rejected such an agency theory that would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate," saying it would "sweep beyond even the 'sprawling view of general jurisdiction'" rejected in *Goodyear*. 571 U.S. at 135-36. The establishment of subsidiaries as separate and distinct legal entities is a key component of a corporation's ability to "structure [its] primary conduct with some minimum assurance as to where that conduct will and will not render [it] liable to suit." *Id.* at 139 (quoting *Burger King*, 471 U.S. at 472).

Ultimately, even if the Court were to consider every plausible contact Caddo identifies, it would be insufficient to establish general jurisdiction over Siemens AG in the United States. The Supreme Court has held that even engaging in a "substantial, continuous, and systematic course of business" in a forum is insufficient to establish general jurisdiction, calling such a formulation "unacceptably grasping." *Id.* at 137-38; *see also Abelesz*, 692 F.3d at 656 ("The proper inquiry [for general jurisdiction] is not … whether a defendant's contacts 'in the aggregate are

11

extensive.'"). Siemens AG's U.S. contacts, considered in the aggregate, *at most* demonstrate that it engages in some business (loosely defined) in the United States. This makes a less compelling case than circumstances the Supreme Court has already rejected and falls far short of rendering Siemens AG "essentially at home" in the United States. *See* 571 U.S. at 136-39 (finding no general jurisdiction over German car manufacturer in California despite 10% of U.S. sales and 2.4% of worldwide sales occurring in California); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (finding no general jurisdiction in Montana over railway company that maintained 2,000 miles of track and employed over 2,000 people in the state); *see also Synthes*, 563 F.3d at 1297 (finding no general jurisdiction over foreign corporation that attended trade show in U.S., purchased and sold some goods in the U.S., and engaged in domestic consultations about product development). Accordingly, the Court cannot rely on general jurisdiction over Siemens AG.

II. Specific Jurisdiction

The Federal Circuit uses a three-part test to evaluate the exercise of specific jurisdiction. The test "considers whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair." *Synthes*, 563 F.3d at 1297.

As the second prong of this test suggests, contacts that do not relate to or provide the factual basis for the plaintiff's claim are not relevant to a specific jurisdiction inquiry. *See NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371,

1377 (Fed. Cir. 2017). Given this limitation, the Court must keep in mind exactly what "contacts" make up the factual basis for Caddo's infringement action. Caddo alleges that its suit arose from the use of Siemens AG's website by U.S. consumers for various purposes, such as to facilitate the purchase of other products or provision of technical support information. But this is not a typical "internet stream of commerce" case where the allegedly infringing product was sold through a website. *See, e.g.*, *Trintec Indus., Inc. v. Pedre Promotional Prods. Inc.*, 395 F.3d 1275 (Fed. Cir. 2005); *Original Creations, Inc. v. Ready America, Inc.*, 836 F. Supp. 2d 711 (N.D. Ill. 2011). Here, the accused instrumentality is a feature of Siemens AG's website itself, not the products allegedly sold through it. As such, the analysis must be cabined to contacts directly occasioned by use of the website itself, not the after-effects of that use.

It is undisputed that Siemens AG's website is neither managed nor hosted in the United States. Furthermore, Caddo's own evidence shows that several of the specific websites it cited in support of its allegations regarding product sales are in fact run by Siemens AG subsidiaries, such as Siemens Switzerland or Siemens Canada. Nonetheless, the record shows that Siemens AG's own website is clearly *accessible* from the U.S., and any U.S. resident who uses it will at minimum encounter the cookies notice, privacy notice, and terms of use supplied by Siemens AG itself. The question is whether the website or its relevant functionalities are "purposefully directed" at consumers in the United States.

13

In general, the mere existence of a website accessible from a particular forum is insufficient to create the minimum contacts required for jurisdiction. *NexLearn*, 859 F.3d at 1378. There must be additional evidence that the defendant targeted the subject forum. *See id.* at 1379-80; *Am. Bridal & Prom Indus. Ass'n, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F. Supp. 3d 924, 933 (N.D. Ill. 2016). Such evidence is lacking here. While Caddo need not show that the United States was the only market for Siemens AG's website, it cannot establish personal jurisdiction on the basic fact that U.S. residents interact with the site. Any U.S.-specific content is accessed by the actions of the user, who must select their particular country or region from many options. This is not meaningfully different from the inclusion of a state in a drop-down menu, which does not amount to "targeting." *See NexLearn*, 859 F.3d at 1378. Likewise, the cookies, privacy, and terms of use agreements are imposed on all website visitors as a condition of use. The jurisdictional significance of these routine or technical interactions, which are increasingly pervasive, is questionable too. *See, e.g.*, *Shippitsa Ltd. v. Slack*, 2019 WL 2372687, at *6-7 (N.D. Tex. June 5, 2019) (suggesting that website functionality that merely facilitates communication via a web browser cannot be a basis for jurisdiction).

The best evidence of purposeful direction toward the United States is the inclusion of certain data protection and privacy provisions that are tailored to U.S. residents. But these are difficult to distinguish from the routine agreements pushed onto every website user as a simple condition of use—they just happen to apply to

14

specific users. And again, these provisions only come into play when a U.S. consumer navigates to Siemens AG's website, and comparable (if not identical) protections are offered to users in other countries.

Caddo argues that the "interactivity" of Siemens AG's website distinguishes it from other cases that rejected jurisdiction based on merely "accessible" websites. R.97, at 4-6.[4] But the most interactive components Caddo has identified, such as product-purchasing functionality, are provided by Siemens AG's subsidiaries. Even if the Siemens AG website is a starting point through which a user can navigate to websites for those entities, this does not equate to conducting business with Siemens AG. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (likening use of a website that directs consumers to other entities to "searching a telephone book"). What remains are user-initiated requests for product information or newsletters, which are insufficient for the reasons discussed above.

For these reasons, the record does not demonstrate that Siemens AG "purposefully directed" its website at the United States, which defeats the first prong of the specific jurisdiction test. The Court lacks jurisdiction over Siemens AG in this case.

---

[4] Caddo explicitly disclaims any reliance on the "sliding scale" approach to interactive websites used in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). R. 97, at 5-6. This approach has not been adopted by either the Federal Circuit or Seventh Circuit. *See NexLearn*, 859 F.3d at 1378 n.4; *Illinois v. Hemi Grp. LLC*, 662 F.3d 754, 758 (7th Cir. 2010).

III. <u>Jurisdictional Discovery</u>

Caddo requests that if the Court finds personal jurisdiction has not been demonstrated, it should grant limited discovery on that issue rather than dismiss Caddo's claims outright. Regional circuit law governs a request for jurisdictional discovery. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009). In order to obtain jurisdictional discovery, a plaintiff must first "establish a colorable or prima facie showing of personal jurisdiction." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). "Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Id.*

Jurisdictional discovery is not appropriate here because Caddo has not made a colorable or prima facie case for jurisdiction. Notably, Caddo claims that the discovery it seeks will support its argument for exercising *general* jurisdiction over Siemens AG. *See* R. 97, at 6-7. The Supreme Court has expressed skepticism that significant discovery should be necessary to determine where a corporation is subject to general jurisdiction. *See Daimler*, 571 U.S. at 139 n.20 ("[I]t is hard to see why much in the way of discovery would be needed to determine where a corporation is at home."). In any event, Caddo has not come close to showing that general jurisdiction is be available here, and the discovery it seeks will not fill in the gaps.

As for specific jurisdiction, the degree to which the Siemens AG website creates meaningful contacts with the United States is already evident without discovery. Imposing burdensome discovery on a foreign corporation "at a stage where the district

16

court is trying to determine whether it has any power over the defendants" is not appropriate when the central questions could be answered by ordinary pre-suit investigation. *Cent. States*, 230 F.3d at 947. Accordingly, Caddo's request for jurisdictional discovery in lieu of dismissal is denied.

## Conclusion

For the foregoing reasons, Siemens AG's motion to dismiss for lack of personal jurisdiction, R. 75, is granted. Caddo's motion for jurisdictional discovery, R. 81, is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 9, 2022